# Malickson *v*. Louis J. Bergdoll Motor Company, Appellant.

*Master   and   servant—Discharge—Incompetency—Evidence—Charge of court—Mitigation of damages.*

1. In an action by an employee against his employer to recover salary after an alleged wrongful discharge, the plaintiff in order to establish a prima facie case need only to show the contract and his discharge. The burden is then shifted to the defendant to show that the plaintiff had failed to perform his contract, and that the discharge was therefore lawful.

2. Where the general purchasing manager of an automobile company is discharged on the ground of alleged incompetency in overstocking the company by his purchases, and in selling material at cut prices contrary to agreements which his company were bound by, and the evidence is contradictory, the trial judge commits no error in charging in substance that it was not incumbent for plaintiff to be so perfect as never to have made a mistake, and that if he discharged the duties of his position in a proper way and according to the instructions that were given to him, and in accordance with the manner of conducting the automobile business as he was given to understand it, and of loyalty to his employer, he could recover.

3. In such a case where the defendant shows in mitigation of damages that the plaintiff had engaged in a partnership business after his discharge, and a question is raised as to the value of the good will of the partnership, it is not error for the trial judge to express an opinion to the effect that the jury would have to arrive at any value of such good will in a very careful manner because the testimony with regard to it was uncertain, if the evidence shows that the partnership had only been in existence seven months, had made a very small profit, and no facts are disclosed on which the jury could do more than make a guess about the value of the good will.

4. Where an employee of an automobile company is discharged for alleged incompetency, and the president of the company testifies to such incompetency, it is proper to permit the vice president and general manager of the company to testify as to plaintiff's competency if it appears that the vice president had had an extensive acquaintance with the business as a mechanic, and sales agent, and through his connection as an official with the defendant company.

Argued Dec. 16, 1912. Appeal, No. 222, Oct. T., 1912, by defendant, from judgment of C. P. No. 2, Phila. Co.,

June T., 1911, No. 2,240, on verdict for plaintiff in case of Philip S. Malickson v. Louis J. Bergdoll Motor Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.    Affirmed.

Assumpsit for salary.    Before STAPLES, P. J.
The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:
[You have heard the testimony upon the part of the plaintiff (it is his own testimony and that of Mr. Johnson), as to how he performed the duties of this position under that contract.] [8]  He stated that he did all that he could do in the line of his employment as general purchasing agent, and that, while there may have been some things that happened in the company, and in the course of the business, in which certain parts of automobiles were not on hand, or certain delays were had, that none of that was his fault; that the fault, if there was any, was initiated or caused by the defendant company, in not having received, as it should have received, if the orders had been given in proper time, motors to be used in the construction of automobiles.  As we understand this case, this company was engaged in the construction or building of automobiles by assembling parts.  While there is no direct testimony, yet we think it may be concluded from all the testimony that none of the parts was made by this defendant company itself, but it purchased all the parts, and of course it was the duty of the general purchasing agent to secure these parts, if he were given full authority and full power to do so, and he received instructions to that effect.

Did he perform his duties as general purchasing agent in a reasonably proper manner?  It was not incumbent upon him to be so perfect as never to have made a mistake, and it would not prevent a recovery upon his part if at some time during this year he may have made some mistake or been guilty of one act of neglect, or something of that kind, whereby some part did not come as

soon as it ought to, or was not on hand as it ought to be. [In order for you to find that the plaintiff in this case was incompetent, there should have been such evidence submitted to you as would warrant the conclusion upon your part that he was incompetent in such a way as to prevent the ordinary and reasonable construction of automobiles by this company, in accordance with its business and its plan.] [3]   It was the duty of the plaintiff to be advised of about how many automobiles it was intended to construct, and what the means were at hand for the construction of them, and for the ordering in sufficient time, and the purchasing of the material necessary for the construction, if he had full power so to do, and it was understood that that was absolutely, or substantially absolutely, in his control, and that he was held responsible for the same, and if that were the case, and he did not do it, so that there was substantial delay (not just a delay for a day or so, but substantial delay), which interfered with the general business of the company, then we say to you that he is not entitled to recover, because then the defendant company had the right to discharge him. But if he discharged the duties of his position in a reasonable way, in a proper way, and according to the instructions that were given to him, and in accordance with the manner of conducting the business as he understood it, and as he was given to understand it, and he was not guilty of disloyalty or bad faith, then we say he is entitled to recover. . . .

What was the evidence in regard to that?   It was stated in general terms that there were parts missing, but what were the parts?   Were they parts that were actually necessary, and was it by reason of their not being there that the construction of the automobiles was delayed?   As we remember the testimony of particular items that were mentioned, there was the item of some kind of gears or controls of the Warner Gear Company. It was his duty, of course, to have gears on hand, and it was the duty of the plaintiff, as purchasing agent, to have

inquired as to whether or not gears were necessary and to have ordered them. The evidence upon the part of plaintiff is that they were ordered by him and were ordered with the knowledge of the president of the defendant company; that he was consulted about it and that he O. K.'d it, and that the way in which they were ordered was intelligible, or ought to have been intelligible to the person who received the order. Did he order them in such a way as relieved him from the charge of incompetency, or relieved him from the charge of carelessness? The letter from the gear company was to the effect that the order was not intelligible. The plaintiff replied to that that it was intelligible as far as he was concerned, but that he was not acquainted with what their code was, if they had one. We do charge you, however, that one act of that kind would not be sufficient for you to find generally that the plaintiff was incompetent. Not one mistake of an employee, a mere mistake, would be enough to constitute such incompetence as would justify or warrant his employer in discharging him. The incompetence to be found by a jury, as being enough to warrant the discharge of an employee by an employer, must be such incompetence as generally affects the business, or interferes with the manufacture of the article which he is employed to purchase.

Then there was the item of the spark plugs. You remember the testimony with reference to that. These spark plugs were bought of some concern that had a patent upon them, and they were sold under a restriction of price; that is to say, that they were not to be retailed under a certain price, and, as we gather substantially from the testimony, the defendant company agreed to that, and the charge is made that the plaintiff sold, without authority and acquainted with this restriction, 1,000 of these spark plugs to the Auto Accessory Company at a price which was very much lower than the price which had been fixed by the company which sold them to the defendant company. With reference to that we

charge you, that if the plaintiff had been instructed by the defendant company (either by the president or some one else in authority), with relation to those spark plugs, and forbidden to sell the same, and notwithstanding that prohibition or that order not to sell, he, in violation of it, sold at a price less than that to which the company was restricted, that that was such an act as would entitle the defendant company to discharge the plaintiff. If, however, there was no such order of that kind given (of course, all this is subject to your findings from the weight of the evidence in the case), and the plaintiff sold these spark plugs to the Auto Accessory Company under an amicable course of dealing between the defendant company and the Auto Accessory Company, by which they exchanged parts of automobiles at cost prices, and this manner of dealing was understood by the defendant company and by the president, who appears to have been the manager, that then the action of the plaintiff was not such as would authorize his discharge by the defendant company, and we further state to you, that if you should find from the weight of the evidence all of these things against the plaintiff, that is to say, in the purchasing of the large quantities of parts, in the ordering of the gears, and in the sale of the spark plugs, and other matters complained of, if there is specific evidence that there were other matters, and all these taken together were such as to convince you, from the weight of the evidence, that the plaintiff was either incompetent or disloyal, then the defendant company had the right to discharge him, and the plaintiff is not entitled to recover. But if you find that there was not such an excess of articles ordered or purchased as to show incompetence, or that there was not such evidence of the want of ordering parts, and such evidence of want of care in the looking after the stock of the company as to warrant you in finding incompetence, and that the plaintiff's version of the order to the gear company was correct, and the plaintiff's version of the sale of the spark plugs was correct, then we say to you the plaintiff would be entitled to re-

cover if he performed his duties as general purchasing agent in a reasonably proper manner.

The defendant contends that in addition to that, the defendant company is entitled to have a credit for whatever the business was worth by reason of his efforts employed therein, in addition to the actual profits in dollars and cents, to the extent of what its good will was, and we charge you that that is a correct contention if you find from the evidence that the good will was worth anything. [To the mind of the court there was no direct testimony as to what the good will of that concern was worth.] [1]  Can you figure it out from the testimony?  Is there enough contained in the testimony, from which you can figure that the good will was worth anything on the first day of March, 1912?  Because, as we take it that would be the period when it ought to be fixed.  You remember the testimony that in some of the good months like August, September and October, there were fairly good profits, and in other months the profits were either nothing, or, upon the other hand, there was a loss.  Looking at it as reasonable men, what was the good will worth?  What would you have been willing to have given for that good will if you had taken the statements made here showing the profits for some of the months and the loss for the others?  If you can figure it out reasonably, and as men of judgment and experience, and can arrive at what you think is a fair figure for it, it is your duty to do it, [but the court says to you that you will have to arrive at that in a very careful manner, because the testimony with regard to it is so uncertain.] [1]  If you can it is your duty to do it, but [if you feel that you cannot fix any figure, then you do not have to allow anything for good will, but simply allow the actual profit of $262.73, and deduct that from $2,759.70, which would leave the amount which the plaintiff would be entitled to recover, if you find he is entitled to recover at all, $2,496.97.] [1]

Verdict and judgment for plaintiff for $1,500.  Defendant appealed.

*Errors assigned* among others were (1, 3, 8) above instructions, quoting them.

*Arno P. Mowitz,* for appellant, cited as to the mitigation of damages: Penna. Canal Co. v. Harris, 101 Pa. 80; Bisbing v. Bank, 93 Pa. 79; Renn v. Tallman, 25 Pa. Superior Ct. 503; Stewart v. Walker, 14 Pa. 293; Allen v. Colliery Engineers' Co., 196 Pa. 512.

*Francis Shunk Brown,* of *Simpson, Brown & Williams,* with him *Henry W. Braude,* for appellee, cited: Kane v. Moore, 167 Pa. 275; Hand v. Clearfield Coal Co., 143 Pa. 408; King v. Stieren, 44 Pa. 99; Heyer v. Cunningham Piano Co., 6 Pa. Superior Ct. 504; Coates v. Allegheny Steel Co., 234 Pa. 199.

OPINION BY HENDERSON, J., February 27, 1913:

It is a conceded fact that the defendant entered into an agreement with the plaintiff to employ the latter as general purchasing manager for one year from March 1, 1911, at a salary of $3,500, payable in equal weekly installments and that on the seventeenth of the following May the plaintiff was discharged from further service. This discharge was against the plaintiff's objection and when the contract and discharge were proved a prima facie case for the plaintiff was made out. The burden was then shifted to the defendant to show that the plaintiff had failed to perform his contract and that the discharge was therefore lawful. Evidence was accordingly offered to show that the plaintiff was incompetent and instances were referred to by the witnesses as proof of that incapacity. The most important of these were that the plaintiff purchased an unnecessary number of some parts of the machines to be manufactured and omitted to procure as many of some other parts as he should have done and that he sold a quantity of spark plugs at a cut price to the Automobile Accessories Company contrary to an agreement which his employer had with the manu-

facturer of the spark plugs that the company would not dispose of them at less than the price fixed. Some other complaints were made, but on cross-examination of the witnesses these were shown to be without foundation. Whether the defendant failed to discharge his duties in accordance with his implied undertaking was a question to be decided by the jury. There was conflicting evidence on the subject, and the learned trial judge submitted the question to the jury in a clear, full and fair charge as to which we think there is no just ground of complaint. Instruction was given that if through carelessness or incompetency the plaintiff overstocked the defendant to its injury or neglected to provide the necessary number of any of the automobile parts to enable the defendant to produce its machines as rapidly as was desired or if the spark plugs were knowingly and intentionally sold at a lower price than that to which the company was restricted in its contract with the manufacturer then the plaintiff was not entitled to a verdict. These instructions were amplified in the charge and put the case justly and fairly on the evidence. Complaint is made of the answer to the defendant's second point, but when this is read in connection with the charge the meaning of the court becomes clear. The defendant asked for instructions that if the plaintiff was incompetent at the time of his discharge to perform the service of general purchasing manager in the defendant's business he could not recover. The court affirmed this with the explanation that the plaintiff's incompetency must be such as impaired the business of the defendant or obstructed or hindered it in constructing and putting on the market its cars. This merely directed the attention of the jury to the kind of incompetency that was involved in the case. The jury had been instructed in the general charge that a single slight inadvertence or oversight would not justify the defendant in dismissing its employee; and that if the latter discharged the duties of his position in a proper way and according to the instructions that were given to him and

in accordance with the manner of conducting business as he was given to understand it and with loyalty to his employer he could recover; that it was not incumbent on him to be so perfect as never to have made a mistake and that therefore the evidence to establish his lack of capacity should be such as to warrant the conclusion that his incompetency related to the construction of automobiles by the company and to the ordinary and reasonable administration of its business in accordance with its plan of procedure.   This instruction we regard as strictly within the law.   The plaintiff was required to give diligent and faithful performance, regard being had at all times to his employer's interests.   There is no fixed legal rule; performance or nonperformance must be determined according to the facts: Ulrich v. Hower, 156 Pa. 414.   Evidence in mitigation of damages was offered by the defendant that the plaintiff had engaged in business after his discharge and had derived profit therefrom.   The business referred to was a partnership formed by the plaintiff with his brother and an anonymous partner the latter of whom furnished about $3,000 of capital to be used in prosecuting the business, which was that of dealing in second quality automobile tires.   This partnership was formed in August, 1911.   The court admitted evidence of the plaintiff's share of the profits of the business up to the time when his service with the defendant would have terminated under his contract and also the value of his interest in the good-will of the partnership at that time.   In referring to this part of the evidence the learned judge expressed the opinion that there was no direct testimony as to what the good will of that partnership was worth; that the jury would have to arrive at any value in a very careful manner because the testimony with regard to it was so uncertain.   The defendant complains of this comment on the evidence, but it is difficult to see upon what calculation it can be contended that the court was not entirely correct.   The defendant had the affirmative of the issue on the subject and it was for it to show what the good will

was worth if that evidence were admissible at all. We have examined the testimony closely and have not discovered any fact on which a jury could do more than make a guess about the good will. The partnership had only been in existence about seven months; it had not secured an established trade; the profits to the plaintiff during that period amounted to $262.73 and nothing was disclosed in regard to the prospects of the business which could be said to amount to more than a hope that it would be fairly profitable in the future. The instruction on this point was certainly as favorable to the defendant as it could have asked under the testimony. The offer to show the progress of the business in which the plaintiff became a partner, after the first of March, 1912, when his contract with the defendant terminated, for the purpose of fixing a value on the good will at the date last named would have led the investigation far afield. The general condition of business, the state of the weather, the activity of the partners and other considerations would affect, if not control, the success of the enterprise and it would be a non sequitur that the good will was of a particular value in March because the business was prosperous on the following September or October. The evidence shows that the plaintiff exerted himself to secure other employment and what he earned in that employment the defendant received credit for on the amount due on its contract. No effort was made to prove that he could have secured other or more profitable occupation and the defendant therefore got the benefit of all of the competent evidence tending to reduce the damages arising from the breach of contract found by the jury. It was not necessary for the plaintiff to prove a readiness and willingness to perform the contract after his discharge. He is proceeding for a breach of the contract and to recover in one action the entire amount of damages due him. Prima facie he is entitled to recover to the extent of his wages for the whole term: Emery v. Steckel, 126 Pa. 171.

The objection to the testimony of the plaintiff's witness,

Johnson, is not well taken.  He had been in the automobile business as a mechanic, traveling representative and sales manager, for nine years and was sales manager and vice president of the defendant company while the plaintiff was employed by it.  He testified that he was familiar with the duties of purchasing agents and production managers and his extended connection with the business would seem to justify his opinion to that effect.  We see no substantial reason for holding that he was not a competent witness to testify in regard to the character of the services rendered by the plaintiff in the business of the company of which he was vice president.  He was not only an experienced person but a responsible officer of the company.  If the president was qualified to testify that the plaintiff was incompetent there is no reason for holding under the evidence that the vice president and general selling manager was incompetent to testify to the contrary.  The jury found a verdict for the plaintiff for a sum considerably less than the amount due on the contract and we may infer therefore that they reduced the plaintiff's claim because of the supposed value of the good will of the partnership.  This is as favorable a result as could well be expected under the evidence.

The assignments of error are overruled and the judgment affirmed.